Argued March 4, reversed April 10, petition for rehearing
denied May 14, 1963

## THE WITHAM HILL CORPORATION ET AL *v.*
## CITY OF CORVALLIS ET AL
### 380 P. 2d 792

*Edward L. Clark, Jr.,* Salem, argued the cause for appellants. With him on the briefs were Goodenough, Clark & Marsh, Salem.

*Paul M. Reeder,* Hillsboro, argued the cause and filed a brief for respondents.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

SLOAN, J.

In this case plaintiffs sought and obtained a decree which avoided certain zoning ordinances adopted by defendants acting as the responsible officials of the city of Corvallis. Defendants appeal. For all practical purposes the parties are singular and will be referred to as plaintiff and defendant. A factual background is needed to explain the issue to be decided.

Prior to 1953 plaintiff acquired a tract of some 60 acres of land within the city limits of Corvallis. Plaintiff intended to develop the land for both residential and commercial purposes. In 1953 defendant enacted a comprehensive zoning ordinance. In that ordinance all but 3.2 acres of plaintiff's land was zoned in the R-1 District described as a "One-Family District." The 3.2 acres of plaintiff's land was specifically zoned for commercial use. The 3.2 acre zone was situated within a 16 acre tract which, plaintiff avows, had always been intended to be used for a public parking area for users and customers of businesses operated within the 3.2 acre commercial zone. All of the 16 acre tract, except the 3.2 acres were zoned in the R-1 District. Plaintiff claimed, however, that the provisions of the 1953 ordinance permitted him to use all of that portion of the 16 acre tract designated R-1 for public parking purposes for the benefit of the commercial area. This is claimed despite the clear mandate, just mentioned, of the 1953 ordi-

nance that all of the 16 acre tract except the 3.2 acres were zoned for R-1 residential use. Plaintiff convinced the trial court that the 1953 ordinance did permit the use of the entire 16 acre tract for commercial public parking incidental to the area zoned for commercial use.

In 1959 and 1961 certain amendments were made to the zoning ordinance. If there were any doubt as to the right of plaintiff to have public parking on the questioned land by the 1953 ordinance, the doubt was removed by the later amendments. Because of the trial court's finding, above mentioned, that the 1953 ordinance had permitted public parking in the entire area the court proceeded to hold that the 1959 and 1961 amendments took away this right and thereby deprived plaintiff of property without due course of law and the amendments were void as to plaintiff.

We hold that the trial court erred when it interpreted the 1953 ordinance as it did. And, as we understand the issue presented here, that is the end of the case. It was not contended that the 1953 ordinance could not have prohibited public parking, as defined in the ordinance. It was the proposed changes made by the 1959 and 1961 amendments that were said to have violated plaintiff's rights. Consequently, our concern is limited to the meaning of the 1953 ordinance.

Section 2 of the 1953 ordinance contained certain definitions that were applicable to all of the defined zones created within the city. Among the definitions were these:

"PARKING AREA, PUBLIC

"An open, off-street area used for the temporary parking of more than three (3) automobiles and available for public use, with or without charge or as an accommodation for clients or customers."

"PARKING SPACE

"A clear, off-street area for the temporary parking or storage of one (1) automobile, having an all-weather surface of a width not less than eight feet, a length of not less than twenty (20) feet and not less than seven and one-half (7½) feet in height when within a building or structure; such parking space shall not be less than one hundred and eighty (180) square feet in area and shall have easy access to a street or alley by a driveway having an all-weather surface."

Section 3 of the ordinance divided or zoned the city into ten different districts beginning with the R-1, single family dwelling district, to an M-2, heavy industrial district.

Section 5, specified the uses permitted within the R-1 District. In addition to one family dwellings the uses permitted in the R-1 District included schools, parks, libraries, churches, necessary utility installations and other uses incidental or reasonably convenient for a residential area. The permitted uses did not include public parking. The restraints and limitations contained in the whole of Section 5 indicated an intent to prohibit any form of commercial enterprise such as that proposed by plaintiff within the R-1 District. Subsection D of Section 5 provided that a permitted use shall be "Parking space [within the R-1 District] for dwellings and buildings other than dwellings as required in Section 15." This reference to Section 15 is crucial to decision in this case.

Section 15 specified the space that was required to be provided for off-street parking for virtually every type of building that was governed by the ordinance. It provided for the amount of off-street parking space required for dwellings, dance halls, industrial

buildings, commercial buildings, hotels and other types of buildings. It is important to note that every section in the ordinance which designated the permitted uses within a given zoned district made substantially identical reference to Section 15 to indicate the amount of off-street parking space required for the type of buildings and uses permitted within a given zoned district. It was a section of general application to the entire ordinance.

Recall that Subsection D of Section 5 used the words "Parking space for dwellings and *buildings other than dwellings* as required by Section 15." We have emphasized the words "buildings other than dwellings" because it was claimed that, since Section 15 "provide[d] for certain parking spaces based upon floor space of a commercial or office building,"[①] the emphasized words, relating to permitted uses in the R-1 District, included commercial type parking. We do not agree with that interpretation. If it were correct then, by the same reasoning, the parking permitted within the R-1 District, would have likewise included the same type of parking space required for dance halls, hotels and other buildings mentioned in Section 15. The emphasized words, "buildings other than dwellings," found in Subsection D of Section 5 meant the kind of buildings other than dwellings permitted in the R-1 District. It meant nothing more. The words referred to schools, libraries and the like which were permitted uses, other than dwellings, within the R-1 District.

We conclude that the 1953 ordinance did not permit commercial parking areas within the R-1 District. The decree is reversed and plaintiff's complaint dismissed.

---

① Trial court's opinion.